**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TEAMSTERS ALLIED BENEFIT FUNDS, Individually and on behalf of all others similarly situated,

Plaintiff,

vs.

RUSSELL FRADIN, WILLIAM J. CONATY, CHERYL A. FRANCIS, JUDSON C. GREEN, MICHAEL E. GREENLEES, ALEX J. MANDL, CARY D. MCMILLAN, STACEY J. MOBLEY, THOMAS J. NEFF, STEVEN P. STANBROOK, HEWITT ASSOCIATES, INC., AON CORPORATION, and ALPS MERGER LLC,

Defendants.

Case No. 1:10-cv-04971

**MOTION FOR EXPEDITED DISCOVERY**

Plaintiff Teamsters Allied Benefit Funds ("Plaintiff") hereby moves for the entry of an order expediting the proceedings with respect to its Verified Class Action Complaint ("Complaint"). Plaintiff requests that the Court permit discovery to proceed on an expedited basis and set a hearing on Plaintiff's Motion for Preliminary Injunction sufficiently in advance of the Special Meeting of Shareholders of Hewitt Associates, Inc. ("Hewitt" or the "Company"), scheduled for September 20, 2010, to consider and vote on a proposal to adopt the Agreement and Plan of Merger, dated as of July 11, 2010 ("Merger Agreement") between Hewitt and Aon Corporation ("Aon") and its wholly

owned subsidiary Alps Merger LLC ("Alps")[1] pursuant to which Aon will acquire all of the outstanding shares of Hewitt common stock for a mix of $25.61 in cash and 0.6362 of a newly issued non-voting Aon share for each share of Hewitt stock owned (the "Proposed Merger"). The Proposed Merger is valued at $4.9 billion.

Pursuant to Local Rule 37.2, Plaintiff has contacted Counsel representing Defendants by telephone and was unable to negotiate an accord in regards to expedited discovery. Accordingly, in support of its Motion To Expedite Proceedings, Plaintiff states as follows:

## BACKGROUND

This is a shareholder class action brought by Plaintiff on behalf of the public stockholders of Hewitt to enjoin breaches of fiduciary duty by the Company's Board of Directors (the "Board" or the "Individual Defendants"), and Hewitt for failing to maximize shareholder value in connection with the proposed acquisition of the publicly-owned shares of Hewitt common stock by Aon. Complaint at ¶1.

On July 12, 2010, Hewitt and Aon issued a press release announcing that they had entered into an agreement pursuant to which Aon would acquire all of the outstanding shares of Hewitt in a deal valued at approximately $4.9 billion. Complaint at ¶2. Under the terms of the Proposed Merger, Hewitt shareholders will receive $25.61 in cash and 0.6362 Aon shares for each share of the Company's stock they own. *Id.*

As described below, the Proposed Merger is fundamentally unfair to Plaintiff and the public shareholders of the Company. The Individual Defendants' conduct constitutes

[1] Collectively, Aon and Alps are referred to herein as "Aon."

a breach of their fiduciary duties owed to Hewitt public shareholders, and a violation of applicable legal standards governing their conduct.

**THE MERGER AGREEMENT**

On July 11, 2010, Hewitt and Aon entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Aon would acquire all of the outstanding shares of Hewitt in a deal valued at approximately $4.9 billion. Complaint at ¶55. Under the terms of the Agreement, at the effective time of the Proposed Merger each share of Hewitt common stock outstanding will (at the election of each of the holders of Hewitt's common stock) convert into: (i) 0.6362 of a share of Aon stock, and $25.61 in cash (the "Mixed Consideration"); (ii) an amount of cash (the "Cash Consideration") equal to the sum of: a) $25.61 and b) the product obtained by multiplying 0.6362 by the closing volume-weighted average price as defined in the Merger Agreement; or (iii) a number of shares (the "Stock Consideration") of Aon common stock equal to the sum of a) 0.6362 and b) the quotient obtained by dividing $25.61 by the closing volume weighted average price (the "Exchange Ratio"). Complaint at ¶56.

Hewitt common stockholders who do not make an election will receive the Mixed Consideration, while Hewitt common stockholders who elect to receive either the Cash Consideration or Stock Consideration are subject to automatic adjustment, pursuant to the terms of the Merger Agreement, to ensure that the amount of cash paid and the number of shares issued of Aon common stock each represent approximately 50% of the aggregate merger consideration (taking into account the roll-over of Hewitt options). Complaint at ¶57. No fractional shares of Aon common stock will be issued in the Merger, and

holders of Hewitt common stock will receive cash in lieu of any fractional shares of Aon common stock. *Id*.

While the aggregate fully diluted equity value of the transaction is approximately $4.9 billion, this amount consists of $2.45 billion of cash and the issuance of 64.0 million shares, including the rollover of certain Hewitt options into options to purchase Aon stock. Complaint at ¶59.

Following the Proposed Merger, Aon expects to integrate Hewitt with its existing consulting and outsourcing operations and to operate that segment globally under a newly created Aon-Hewitt brand. Complaint at ¶62. Defendant Fradin will serve as Chairman and Chief Executive Advisor of Aon-Hewitt, and report to Greg Case, the Chief Executive Officer of Aon Corporation. Complaint at ¶62.

On July 26, 2010, Hewitt filed its Preliminary Proxy with the SEC. Complaint at ¶80. The Complaint set forth disclosure claims regarding the lack of information provided to shareholders with respect to the financial valuation conducted by Citigroup Global Markets Inc. ("Citigroup"). Complaint at ¶¶82(a)-(z). Among other things, the Preliminary Proxy fails to disclose:

(a) Details of the financial presentation of Citigroup to the Hewitt Board of Directors (the "Board") on July 11, 2010, stating that the mixed consideration, cash consideration, and stock consideration were fair from a financial point of view; Preliminary Proxy at 67

(b) Information regarding discussions between Citigroup and the Board relating to the fact that the stock portion of the merger consideration is a

fixed number of shares of Aon common stock, and the potential adverse affects on Hewitt shareholders that were identified by the Board; *Id*.

(c) Additional disclosure of the exact events discussed by the Board that would prevent the Proposed Merger from being completed in a timely manner, in addition to the failure of approval by Aon's stockholders or the difficulties Aon may face in completing certain financing commitments; *Id*.

(d) All risks and costs to Hewitt that the Board identified and considered in analyzing the Proposed Merger; *Id*.

(e) Specific conclusions reached regarding the compensation and employment arrangements of some of Hewitt's directors and executive officers that were discussed by the Board in analyzing the Proposed Merger; *Id*.

(f) Information on the discussions of the Board regarding the restrictions on Hewitt to solicit or participate in discussions or negotiations regarding alternative business combination transactions; *Id*.

(g) Particulars as to the Board's discussions regarding the termination fee to Aon of either $85 million or $190 million, as applicable; Preliminary Proxy at 68

(h) The exact challenges identified by the Board of combining business, operations, and workforces of Aon and Hewitt; *Id*.

(i) The content of discussions between Citigroup and certain Hewitt officers, directors, and other representatives of the Company concerning the

business, operations, and prospects of Hewitt and Aon; Preliminary Proxy at Annex C-1

(j) The publicly available business and financial information relating to Hewitt and Aon relied upon by Citigroup in issuing its fairness opinion; *Id*.

(k) Additional disclosure of the "certain financial forecasts," information, and data relating to Hewitt and Aon that were provided to Citigroup by the respective managements of Hewitt and Aon; *Id*.; Preliminary Proxy at Annex C-2

(l) The total information reviewed relating to the potential strategic implications and operational benefits (including the amount, timing, and achievability) anticipated by the managements of Hewitt and Aon as a result of the Proposed Merger; Preliminary Proxy at Annex C-1

(m) Specific descriptions and disclosure of the historical and projected earnings and other operating data of Hewitt and Aon reviewed by Citigroup; *Id*.

(n) Information regarding the capitalization and financial condition information of Hewitt and Aon that was reviewed by Citigroup; *Id*.

(o) Details of the "financial terms of other transactions" that were considered relevant and reviewed in analyzing the Proposed Merger, including details of the premiums identified and companies reviewed by Citigroup in its "Selected Precedent Transactions Analysis"; Preliminary Proxy at 79

(p) Additional disclosure of the estimated financial data for Hewitt, based on internal estimates and provided to Citigroup by Hewitt's management as discussed in Citigroup's "Trading Multiples Analysis"; Preliminary Proxy at 80

(q) Specific descriptions as to how Citigroup derived an EPS growth rate of 13%, and the internal estimates provided by Hewitt's management to aid Citigroup in calculating the "Present Value of Future Share Price Analysis"; Preliminary Proxy at 81

(r) Additional information explaining why Citigroup used an equity discount rate of 9.7% in calculating the Present Value of Future Share Price Analysis; *Id.*

(s) The internal estimates of Hewitt's management used by Citigroup in calculating its selected comparable company analysis; Preliminary Proxy at 82

(t) Specific descriptions of the public filings and internal estimates provided to Citigroup by Hewitt's management in calculating its Discounted Cash Flow Analysis; Preliminary Proxy at 84

(u) The exact "factors" considered in using the rates of return range of approximately 20.0% to 30.0% used by Citigroup in calculating its Leveraged Buyout Analysis; Preliminary Proxy at 84

(v) Internal estimates given to Citigroup by Hewitt's management which Citigroup used in conducting its estimated Pro Forma Discounted Cash

Flow Analysis of Aon for the remainder of the calendar year of 2010 through 2014; Preliminary Proxy at 86

(w) Financial, economic, and market criteria that Citigroup "deemed appropriate" in arriving at its fairness opinion; Preliminary Proxy at Annex C-2

(x) Details of the process engaged in by the Citigroup fairness opinion committee which led to the authorization of the issuance of the fairness opinion; *Id*.

(y) Specifics regarding what led to the decision not to solicit third party indications of interest in the possible acquisition of all or a part of Hewitt, including why the fairness opinion does not address the relative merits of the Proposed Merger as compared to any alternative transactions in which Hewitt may engage; *Id*. and,

(z) Additional disclosure concerning Citigroup's past transactions with Hewitt and Aon listed in the fairness opinion, including the exact compensation received by Citigroup for such services. *Id*.

In sum, the Preliminary Proxy fails to provide a fair summary of the Proposed Merger and the basis for the conclusions reached in support thereof. The Proposed Merger is wrongful and unfair to Hewitt' public shareholders, and represents an effort by the Individual Defendants[2] to maintain and improve their own financial positions and interests at the expense of and to the detriment of the Company's shareholders. The

[2] Director Defendants Russell Fradin, William J. Conaty, Cheryl A. Francis, Judson C. Green, Michael E. Greenlees, Alex J. Mandl, Cary D. McMillan, Stacey J. Mobley, Thomas J. Neff, and Steven P. Stanbrook, are collectively referred to hereinafter as the "Individual Defendants."

Individual Defendants have breached their fiduciary duties, aided and abetted by Aon and its affiliates. Further, the Individual Defendants have allowed the transaction to be structured in such a way that Hewitt shareholders will only be entitled to receive 50% in cash and 50% in stock. Complaint at ¶70; Preliminary Proxy at p. 106. As such, shareholders will only retain 50% of their investment in the Company, while Aon's credit rating will be protected. *Id*. This is unfair and inadequate given that it allows the Individual Defendants to maintain their positions in the newly formed company, while at the same time substantially decreasing Hewitt shareholders' investments. *Id.*

As a result of the Individual Defendants' improper and unlawful actions, Plaintiff and members of the proposed Class will be harmed in that they: (i) will not receive their fair portion of the value of Hewitt' assets and business, (ii) will not be entitled to receive the Company's dividend payments, (iii) will not be entitled to benefit from the growth prospects presented by the Company's long term record of outperforming the industry, and (iv) will therefore be prevented from obtaining the real value of their equity ownership of the Company. Complaint at ¶¶77-79.

Plaintiff has brought this motion for expedited proceedings in recognition of the fact that Hewitt has stated that it anticipates the Proposed Merger will close within the third or fourth calendar quarter of 2010, and the Company has scheduled the special meeting of the shareholders to approve the Merger for September 20, 2010. The shareholder vote is just approximately five weeks away, and Plaintiff will need sufficient time to review any documents produced and seek further discovery, including the depositions of key witnesses, in order to establish a record with which to seek preliminary injunctive relief.

**STANDARD FOR EXPEDITED PROCEEDINGS**

The Court has broad power to order expedited proceedings. In cases concerning Delaware corporations such as Hewitt, the Seventh Circuit and this Court have each looked to Delaware law in evaluating the propriety of shareholder actions. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 381-82 (7th Cir. 2009) (applying Delaware law to a Delaware corporation); *Weinstein v. Schwartz*, 422 F.3d 476, 478 (7th Cir. Sept. 1, 2005) (finding that Delaware law was the governing law on derivative shareholder claims because the corporation at issue was incorporated in Delaware); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir. 1990) (applying Delaware law, in part because "Delaware supplies an elaborate body of law to govern corporate affairs…"); *Bahr v. Sunrise Senior Living, Inc.*, Slip Copy, 2010 WL 432273, at *2 (N.D.Ill. Feb. 3, 2010) (finding that the law of a corporation's state of incorporation applies to corporate liability claims); *Stahl v. Abbott Laboratories*, 2000 WL 1170071, at *2 (N.D.Ill. Aug. 16, 2000) (the court granted the plaintiff's motion for expedited discovery and preliminary injunction in a shareholder class action); *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501, at *4 (N.D.Ill. Sep. 15, 1999) (the court granted the plaintiff's motion for expedited discovery as it "provides a fuller record for the court when deciding to issue a preliminary injunction."); *Ragold, Inc. v. Ferrero, U.S.A.*, Inc., 506 F.Supp. 117, 130 (N.D.Ill. Aug. 8, 1980) (granting a motion for expedited discovery).

A plaintiff seeking expedited proceedings need only show "some reason justifying departure from the sequence envisioned by the rules . . . ." *American Stores Co. v. Lucky Stores, Inc.*, Civ. A. No. 9766, 1988 WL 909330, at *2 (Del. Ch. Apr. 13, 1988). In

making its decision on a motion to expedite, the Court does not judge the merits of the case or "even the legal sufficiency of the pleadings." *Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. 1994). Rather, the Court's inquiry focuses on whether the plaintiff demonstrates that its claims are colorable, and whether there is a sufficient possibility of threatened irreparable injury. *Id.*; *Morton v. American Marketing Indus. Holdings, Inc.*, 1995 WL 1791090, at *2 (Del. Ch. 1995) (plaintiff must show sufficiently colorable claim and sufficient possibility of threatened irreparable injury to justify costs involved).

Thus, expedited proceedings will be ordered where "in the circumstances the plaintiff has articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury." *Giammargo*, 1994 WL 672698, at *2. Whether a plaintiff has demonstrated a colorable threat of irreparable harm is limited to a review of the face of the pleadings and the Court "is not required or able on this application to judge the merits or even the legal sufficiency" of the pleadings. *Id.* Moreover, "[a] party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare." *In re Int'l Jensen S'holders Litig.*, 1996 WL 422345, at *1 (Del. Ch. 1996).[3]

In fact, defendants routinely argue that any delay by a plaintiff in seeking discovery indicates a lack of diligence and justifies a denial of preliminary injunctive relief. *See, e.g., In re SunGard Data Sys. S'holder Litig.*, 2005 WL 1653975, at *2 (Del.

[3] *See also, In re Digex S'holders Litig.*, 789 A.2d 1176, 1187 (Del. Ch. 2000) (noting that expedited discovery had taken place); *Smith v. Van Gorkom*, 1985 WL 22040, at *2 (Del. Ch. 1985) ("At the outset, plaintiffs took substantial expedited discovery . . .")

Ch. 2005) ("defendants contend, there is too short a period left in which to fairly present the issues in advance of the stockholder meeting date.").

**PLAINTIFF HAS STATED A COLORABLE CLAIM**

**Duty to Maximize Shareholder Value**

The directors of a Delaware corporation have a duty to maximize shareholder value upon a change in corporate control. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986); *Barkan v. Amsted Industries, Inc.*, 567 A.2d 1279, 1285 (Del. 1989).

While there is no single prescribed method that directors must use to obtain this objective, "the directors must be especially diligent. In particular, this Court has stressed the importance of the board being adequately informed in negotiating a sale of control. . ." *QVC Network v. Paramount Communications, Inc.*, 637 A.2d 34, 44 (Del. 1993); *see also Barkan*, 567 A.2d at 1287 ("The need for adequate information is central to the enlightened evaluation of a transaction that a board must make.").

Before making a business decision, the directors of a corporation, in discharging their duty of care, must inform themselves of all available material information. *Smith v. Van Gorkom*, 488 A.2d 858, 872-873 (Del. 1985). The Individual Defendants cannot satisfy this duty by blindly relying upon advice from sources that are the subject of substantial conflicts of interest. *See Sealy Mattress Co. v. Sealy, Inc.*, 532 A.2d 1324, 1338 (Del. Ch. 1987).

It is established, then, "[h]aving informed themselves of all material information reasonably available, the directors must decide which alternative is most likely to offer the best value reasonably available to the stockholders." *Paramount*, 637 A.2d at 45.

Furthermore, "[a]lthough the directors have a choice of means, they do not comply with their *Revlon* duties unless they undertake reasonable steps to get the best deal." *Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 192 (Del. Ch. 2007).

**Duty of Disclosure**

It is well established that "directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citations omitted); *see also McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000). Consequently, the Individual Defendants were not only required "to make an informed, deliberate judgment, in good faith, that the merger terms, including the price, were fair," but they were also obligated "***to disclose with entire candor all material facts***" concerning the Merger. *McMullin*, 765 A.2d at 917 (emphasis added).

Courts have recognized that "[i]t would be important for shareholders, in evaluating the advice of [the Company's] directors to vote in favor of the [transaction], to know that … [the Company] was being advised by [advisors] who were also advising [the acquiror]." *Kohn v. Am. Metal Climax,* 322 F. Supp. 1331, 1362 (E.D. Pa. 1970). As explained by Vice Chancellor Noble, "[p]erhaps it is unavoidable that financial advisors regularly seem to suffer from conflicts of one degree or another, but, if that is the likely state of affairs, then the stockholders are entitled to know what material factors, if any, may be motivating the financial advisor. The Company is asking its stockholders to have faith in [the investment adviser] and to rely upon its expertise; [the investment adviser] may well be deserving of that confidence, but the stockholders have every right

to expect the Company to share with them any extraneous, substantial reasons [the investment adviser] may have for seeing that the transaction is consummated." *David P. Simonetti Rollover IRA v. Margolis*, 2008 WL 5048692, at *14 (Del. Ch. Jun. 27, 2008)

The Merger cannot be allowed to proceed without the critical material information necessary for shareholders to make an informed decision regarding whether to vote for or against the Merger, or whether to pursue their appraisal rights. Following the consummation of the Merger, Plaintiff and absent Class members will be forever foreclosed from making a meaningful informed decision as to whether Aon's offer adequately compensates them for their ownership interest in the Company.

**PLAINTIFF HAS SHOWN SUFFICIENT POSSIBILITY OF IRREPARABLE HARM**

Defendants have already filed the Preliminary Proxy with the SEC and the Company has set the date for the special meeting of shareholders with regards to the Merger for September 20, 2010. The shareholder vote on the Merger is approximately five weeks away.

Plaintiff and members of the Proposed Class[4] are therefore faced with the threat of irreparable injury. Once such a merger is complete, Plaintiff is highly unlikely to be able to obtain a rescission of the transaction. Rescission of such complex corporate transactions is highly disfavored by the Court because of the inherent difficulties in trying to "unscramble the eggs." *See, e.g., In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 728 (Del. Ch. 1999). Furthermore, it is highly unlikely that the Individual Defendants are financially capable of funding a judgment in the context of a $3.4 billion merger.

[4] Holders of the common stock of the Company, who have been and/or will be harmed as a result of the wrongful conduct alleged in the Complaint are referred to herein as members of the "Proposed Class."

Consequently, courts have recognized that the breach or abdication of the board members' fiduciary duty in the context of a merger is appropriately remedied by injunction. *See Sealy*, 532 A.2d at 1324.

In contrast, there is no undue prejudice to Defendants in moving forward expeditiously. Plaintiff expects that discovery relating to its claims will be focused and narrowly-tailored, and to that end has delivered a courtesy copy of document requests to Defendants in anticipation of this Court ordering expedited discovery. Following review of the documents produced pursuant to the requests, Plaintiff anticipates that depositions of key witnesses will be required, including the depositions of Defendant Fradin, an independent member of the Company's Board, a representative of Hewitt's financial advisor, and a representative of Aon. This discovery is necessary for Plaintiff to build an evidentiary record in support of a contemplated motion for a preliminary injunction, which Plaintiff will request a hearing before the Court prior to the shareholder vote on the Proposed Merger. Accordingly, the Court should permit discovery to commence immediately and on an expedited basis and set an expedited briefing schedule for Plaintiff's Motion for Preliminary Injunction.

WHEREFORE, Plaintiff respectfully requests that its motion for expedited proceedings be granted, and the Court should enter an Order (1) directing Defendants to respond to Plaintiff's document requests on an expedited basis; (2) permitting the additional discovery necessary for briefing and argument on Plaintiff's Motion for Preliminary Injunction; and (3) scheduling a hearing on Plaintiff's Motion for Preliminary Injunction.

Dated: August 16, 2010

/s/ Michael J. Freed

Michael J. Freed
Steven A. Kanner
Donald L. Sawyer
**FREED KANNER LONDON & MILLEN**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521

**SAXENA WHITE P.A.**
Christopher S. Jones (SB#6239465)
Joseph E. White, III
Lester R. Hooker
Brandon T. Grzandziel
2424 North Federal Highway, Ste. 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3382

***Attorneys for Plaintiff Teamsters Allied Benefit Funds***