UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---------------------------------------------------------------------

| | |
|---|---|
| TEAMSTERS ALLIED BENEFIT FUNDS, | : |
| Plaintiff, | : |
| vs. | :   1:10-CV-04971 |
| RUSSELL FRADIN, WILLIAM J. CONATY, CHERYL | : |
| A. FRANCIS, JUDSON C. GREEN, MICHAEL E. | : |
| GREENLEES, ALEX J. MANDL, CARY D. | : |
| MCMILLAN, STACEY J. MOBLEY, THOMAS J. NEFF, | : |
| STEVEN P. STANBROOK, HEWITT ASSOCIATES, | : |
| INC., AON CORPORATION, AND ALPS MERGER | : |
| LLC, | : |
| Defendants. | : |

--------------------------------------------------------------------- x

## HEWITT DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Craig C. Martin
Matt D. Basil
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350

John S. Kiernan (*pro hac vice admission pending*)
Maeve O'Connor (*pro hac vice admission pending*)
Lisa Howley (*pro hac vice admission pending*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000

*Attorneys for the Hewitt Defendants*

Defendants Russell Fradin, William J. Conaty, Cheryl A. Francis, Judson C. Green, Michael E. Greenlees, Alex J. Mandl, Cary D. McMillan, Stacey J. Mobley, Thomas J. Neff, Steven P. Stanbrook and Hewitt Associates, Inc. ("Hewitt") (collectively "Hewitt Defendants") respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Expedited Discovery.

## PRELIMINARY STATEMENT

This suit is an unsustainable attempt to block the shareholder owners of Hewitt from exercising their right to vote on whether to accept a proposed merger with Aon Corporation ("Aon") (the "Proposed Transaction") that offers them a 41% premium over Hewitt's stock price on the last trading day before the merger was announced and a price significantly higher than any that Hewitt's stock ever reached before the merger announcement.[1]  The Plaintiff minority shareholders, who have statutory appraisal rights under Delaware law if they think the price is too low, are seeking to usurp their fellow shareholders' entitlement to vote for this extremely favorable deal even though:  (i) it represents an opportunity for shareholders to receive far more value than the market has ever assigned to their shares; (ii) the Board of Directors that the shareholders duly elected to protect their interests has unanimously recommended acceptance of the Proposed Transaction; and (iii) no competing bidder has taken up the merger agreement's excellent opportunity for anyone with a superior proposal to trump the existing deal and buy Hewitt in Aon's stead.

Courts applying the Delaware law that all parties agree governs this dispute have uniformly agreed that plaintiffs seeking to enjoin a shareholder vote on whether to accept a high

---

[1]   Michael Corkery, *AON-Hewitt Deal Is No Bellwether*, WALL ST. J. DEAL J. (July 12, 2010), *available at* http://blogs.wsj.com/deals/2010/07/12/aon-hewitt-deal-is-no-bellwether.

premium offer when there is an opportunity for competing bids but no competing bidder must make an extraordinarily strong showing and must present colorable claims before they are entitled to expedited discovery.  The Complaint does not satisfy this standard, presenting only conclusory allegations of a type that courts applying Delaware law have repeatedly rejected.

Plaintiff's motion to expedite therefore should be denied because (i) this Court should abstain from the exercise of jurisdiction over this matter in favor of the four earlier-filed actions that are proceeding on a cooperative basis in Cook County Chancery Court as set forth in the Hewitt Defendants' Motion to Abstain, and (ii) Plaintiff has failed to state a colorable claim that Hewitt's board of directors breached its fiduciary duties in recommending the Proposed Transaction to shareholders or otherwise demonstrate an entitlement to the exceptional remedy of expedited discovery.

## FACTUAL BACKGROUND

The merger agreement that Plaintiff seeks to enjoin shareholders from voting to accept provides two central limitations on Hewitt's obligation to close its merger with Aon.  First, the proposed merger cannot be consummated unless approved by vote of the holders of a majority of the issued and outstanding shares of the target company.  Dissenting individual shareholders who believe the merger consideration is inadequate – a remarkable concept given that it is one far above the value the markets or any competitive bidder has attached to the stock – can litigate their individual claims of pure inadequacy in a statutory appraisal proceeding, but cannot inflict their contrarian views on a majority of shareholders if those shareholders want to accept the deal.

Second, the merger agreement empowers Hewitt to walk away from the agreed upon transaction, upon payment of a termination fee, if any other bidder that thinks Hewitt is worth

more comes forward with a superior proposal.  The termination fee is designed to provide some

compensation to Aon for its substantial effort in negotiating a complicated transaction to the

point of agreement and in setting the price for any competing bidder to try to beat, but not a price

too high that it deters a competing bidder that is ready to pay materially more for Hewitt from

coming forward.

Thus, the challenged merger agreement provides:

- Hewitt shareholders – including Plaintiff – will have the right to vote on the proposed transaction at or before a shareholder meeting scheduled for September 20, 2010.  Agreement and Plan of Merger, dated as of July 11, 2010 ("Merger Agreement") §§ 3.03(c), 7.01(a), appended as Annex A to Joint Prospectus/Proxy Statement, filed August 17, 2010 ("Proxy Statement") (attached hereto as Exhibit A).

- Hewitt's Board of Directors is empowered to terminate the transaction if it receives a better offer from a different suitor before the shareholder vote.  Merger Agreement §§ 5.02, 8.01(h).

- If Hewitt's Board were to exercise its right to terminate the merger agreement because a superior proposal came along, Hewitt would be required to pay a termination fee to Aon.  This termination fee is two-tiered: (i) $85 million (or 1.7% of the transaction value) if an expression of interest that results in a superior proposal was received within 30 days and accepted within 50 days of when the merger agreement was filed with the SEC, and (ii) $190 million (3.7% of the transaction value) thereafter.  Merger Agreement §§ 5.02, 6.07(h).

- Hewitt is not permitted to affirmatively solicit new offers but is free to furnish information to and conduct negotiations with a third party in connection with an unsolicited proposal that constitutes or reasonably could be expected to result in a superior proposal.  Merger Agreement § 5.02.

Notwithstanding Hewitt's contractual right to terminate the Proposed Transaction and the

unusually low 1.7% break-up fee during the initial period after the July 11 public announcement

of the Proposed Transaction, no bidder has come forward in the preceding forty days with any

expression of interest in a proposal for paying more to purchase Hewitt than the consideration

Aon has offered.

3

## ARGUMENT

As Delaware courts have repeatedly recognized, "in the absence of a competing offer a plaintiff seeking to enjoin a premium transaction for a corporation's shares must make a particularly strong showing on the merits to obtain a preliminary injunction because an injunction in such circumstances risks significant injury to shareholders." *Next Level Commc'ns, Inc. v. Motorola, Inc.*, 834 A.2d 828, 845 (Del. Ch. 2003); *see also In re Cysive, Inc. S'holders Litig.*, 836 A.2d 531, 557 (Del. Ch. 2003) (injunction denied in part because it threatened more harm than good in the absence of higher bid). Plaintiff's Complaint contains nothing remotely approximating the required "particularly strong showing."

More generally, expedited discovery "should not be used as a means to test claims that are wholly unsubstantiated" due to "the burden it imposes on all parties." *Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 U.S. Dist. LEXIS 24653, at *8 (E.D. Wisc. Feb. 26, 2010). Because strike suits attempting without basis to enjoin shareholder votes in circumstances where they can be a substantial, unwarranted distraction to enterprises devoting enormous care to accomplishing transformatively important transactions, and can constitute an abuse for that reason, Delaware courts have repeatedly refused to grant expedited discovery in anti-merger strike suits like this unless the plaintiff has articulated a "sufficiently colorable claim" and shown a "sufficient possibility of threatened injury." *See, e.g., Giammargo v. Snapple Beverage Corp.*, No. 13845, 1994 Del. Ch. LEXIS 199, at *6 (Del. Ch. Nov. 15, 1994).[2] Where a plaintiff's allegations are "purely speculative" or "'trumped up' or stretched to make a colorable suit," expedited discovery prior to a preliminary injunction hearing is not justified. *Merrill Lynch,*

---

[2] Plaintiff should not be permitted to escape this requirement simply because he brought suit in federal court, rather than Delaware. Consistent examination of requests for expedited discovery is essential to discourage such "forum shopping."

*Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000); *Share Corp.*, 2010 U.S. Dist. LEXIS  24653, at *7.

In this case, where Plaintiff seeks to prevent shareholders from voting on a merger offering them a 41% premium and when no competing bidder has come forward, Plaintiff cannot begin to meet the standard for expedited discovery in support of a motion for preliminary injunction.  On the contrary, the harm that Hewitt's shareholders are likely to suffer if the Proposed Transaction is enjoined far exceeds any potential benefit.

## I.      Plaintiff Has Not Asserted A Colorable Claim Against Hewitt Defendants.

Plaintiff has not alleged that any aspect of the Board's recommendation was infected by self-dealing and, in fact, cannot make such an allegation because all of the directors other than Mr. Fradin, Hewitt's CEO, are independent, outside directors with no financial interest in the Proposed Transaction.  Rather, Plaintiff's Complaint boils down to six allegations in support of its claim that the Hewitt Defendants breached their fiduciary duty in negotiating and recommending the Proposed Transaction to Hewitt's shareholders.  Each of these allegations falls squarely within a category that Delaware courts have repeatedly addressed and found insufficient to state a claim, and none of them warrants depriving shareholders of their rights.

### A.      The Termination Fee Is Well Within The Range That Delaware Courts Have Found To Be Reasonable.

Plaintiff alleges that the termination fee to be paid to Aon in the event of termination of the Merger Agreement is excessive.  Complaint ¶ 72.  The termination fee detailed in the Merger Agreement, which begins at just 1.7% for the first fifty days following the filing of the merger agreement with the SEC, and increases to 3.8% thereafter, *see* Merger Agreement § 6.07(h), is well within (and, for its first 30 days, at the very low end of) the range of termination fees that

have been previously upheld by Delaware courts as appropriately reflecting the contracting

party's entitlement to compensation if it has done all the work of negotiating a transaction and

setting a market price only to be outbid but not so high that it deters a competing bidder that is

willing to pay materially more from making its bid.  *See, e.g.*, *In re Toys "R" Us*, *Inc. S'holder*

*Litig.*, 877 A. 2d 975, 1015, 1019-21 (Del. Ch. 2005) (upholding a termination fee of 3.25

percent of enterprise value and 3.75 percent of equity value of the deal); *McMillan v. Intercargo*

*Corp.*, 768 A.2d 492, 505 (Del. Ch. 2000) (3.5% termination fee is "within the range that is

generally considered reasonable" and "it is difficult to see how a 3.5% fee would have deterred a

rival bidder who wished to pay materially more for [the defendant company]"); *In re 3Com*

*S'holders Litig.*, No. 5067-CC, 2009 Del. Ch. LEXIS 215, at *24-25 (Del. Ch. Dec. 18, 2009)

(upholding a termination fee that, along with an expense reimbursement fee, represented over

4% of the equity value of merger); *Goodwin v. Live Entm't, Inc.*, No. 15765, 1999 Del. Ch.

LEXIS 5, at *69 (Del. Ch. Jan. 22, 1999) (approving termination fee of 3.125% plus $1 million

in expenses for total percentage of 4.167%).

### B.    Plaintiff's Bald Assertion That Hewitt's Intrinsic Worth Exceeds $50 Per Share Does Not State A Colorable Claim.

Plaintiff's speculative statement that the merger consideration in the Proposed

Transaction "may not adequately capture Hewitt's true worth as a merger candidate," Complaint

¶¶ 67-68, does not establish a colorable claim for breach of fiduciary duty.  There is no

suggestion in the Complaint that the Hewitt Board failed to adequately inform itself about

Hewitt's intrinsic value prior to approving the Proposed Transaction.  Nor is there any

suggestion that the Hewitt Board rejected a proposal offering higher consideration from a rival.

*See In re Santa Fe Pac. Corp. S'holder Litig.*, No. 13587, 1995 Del. Ch. LEXIS 70, at *25-26

(Del. Ch. May 31, 1995) (complaint failed to state a breach of fiduciary duty claim because it did

not allege that a superior transaction was available and that the board had prevented shareholders

from considering it), *aff'd in part, rev'd in part on other grounds*, 669 A.2d 59 (Del. 1995).

Most significantly, Plaintiff cannot dispute that in the period since the Proposed Transaction was

publicly announced on July 11, no competing bidder has come forward to offer more than the

41% premium offered by Aon.  Plaintiff's contention that the merger consideration is inadequate

cannot be the basis for a claim when the public markets valued Hewitt at a far lower price than

Aon has offered and no other bidder has demonstrated an interest in paying more.

> **C.      Plaintiff's Allegation That The "No Shop" Provision Of The Merger
>         Agreement Hindered The Development Of A Better Offer Fails To State A
>         Colorable Claim.**

Plaintiff alleges that Hewitt's board took steps to hinder the development of a better offer

by approving the "no shop" provision in the Merger Agreement.  Complaint ¶ 73.  Delaware

courts have repeatedly found that no shop provisions "are standard merger terms, are not *per se*

unreasonable, and do not alone constitute breaches of fiduciary duty."  *In re 3Com*, 2009 Del.

Ch. LEXIS 215, at *25.  That is particularly the case, where, as here the company retains its

ability to respond to expressions of interest by potential competing bidders, to provide such

rivals information, and to terminate the Aon deal and accept a rival's offer if the Hewitt Board

considers it superior.  *See McMillan*, 768 A.2d at 506 (a no-shop provision is not indicative of a

breach of fiduciary duty where it permits the board "to consider an unsolicited proposal [from

another bidder] that the board determined was likely to be consummated and more favorable to .

. . stockholders than the [proposed] merger").

Plaintiff has presented no basis for a conclusion that Hewitt's agreement to this a

provision was tainted or that it has operated to preclude better offers from rivals (who all know

substantial details about the transaction from Hewitt's public filings).  Plaintiff has not alleged

that the Hewitt Defendants included this provision for any reason unrelated to the objective of

obtaining the highest price for Hewitt.  *See In re Toys "R" Us,* 877 A.2d at 1000-01 (a Board is

not prevented from offering bidders deal protections "so long as its decision to do so was

reasonably directed to the objective of getting the highest price, and not by a selfish or

idiosyncratic desire by the board to tilt the playing field towards a particular bidder for reasons

unrelated to the stockholders' ability to get top dollar").

### D.     Plaintiff's Allegation That The Merger Agreement Does Not Include A "Collar" Provision Fails To State A Colorable Claim.

Plaintiff alleges that the Hewitt Board somehow violated its fiduciary duties by electing

not to negotiate a "collar" (or floor and ceiling) on the stock portion of the consideration to be

paid in the Proposed Transaction.  Complaint ¶ 71.  Decisions about what terms to insist on or

compromise on in a negotiation are invariably matters of judgment, and the Hewitt Board's

business judgment to surrender insistence on a "collar" provision in the interest of obtaining the

most favorable price terms possible is entitled to legal deference, such that challenges to such

judgments unaccompanied by a showing of bad faith or conflicting personal interest are subject

to dismissal at the pleading stage.  *See In re NYMEX S'holder Litig*., Nos. 3621-VCN & 3835-

VCN, 2009 Del. Ch. LEXIS 176, at *30-32, n.73 (Del. Ch. Sept. 30, 2009) (noting that "[i]t was

well within the Board's judgment . . . to omit a collar while negotiating various merger terms"

and that the Board's judgment "is only superseded by a showing of gross negligence, bad faith or

conflicting personal interest"); *Wisconsin Inv. Bd. v. Bartlett*, No. 17727, 2000 Del. Ch. LEXIS

42, at *30-31 (Del. Ch. Feb. 24, 2000) (noting that decision to include a collar is "reviewable as

business judgment[] and . . . granted deference" "'where [its] adoption is untainted by director

interest or other breaches of fiduciary duty'" (internal citation omitted)).  Because Plaintiff has

failed to allege bad faith, negligence or personal interest on the part of the Board in deciding not to impose a "collar," Plaintiff has not pleaded a colorable claim on this ground.

     **E.**     **Plaintiff's Allegation That Hewitt's Financial Advisor Was Conflicted Because of Prior Business Dealings With Aon Fails To State A Colorable Claim.**

Plaintiff's allegation that the shareholder vote must be halted on the basis that Hewitt's financial advisor, Citigroup Global Markets, Inc. ("Citigroup") was conflicted because of past business dealings with Aon,  Complaint ¶ 75, is similarly unsustainable as a matter of Delaware law.  Citigroup's prior representation of Aon in unrelated transactions is legally insufficient to establish a breach of fiduciary duty warranting a prohibition against the shareholder vote where, as here, Plaintiff has pleaded no facts showing that Citigroup's affiliation had "a causal influence on [the Hewitt] board's process" to accept the Proposed Transaction.  *In re Toys "R" Us, Inc.*, 877 A.2d at 1006.  Citigroup's past business dealings with Aon were fully disclosed in the proxy materials provided to shareholders.  *See* Proxy Statement at C-2.

     **F.**     **Plaintiff's Allegation That Certain Information Was Not Disclosed In the Preliminary Proxy Fails To State A Colorable Claim.**

Hewitt and Aon have provided their respective shareholders with a robust, approximately 270 page joint prospectus and proxy statement providing material information on the background of the merger, the reasons for the Hewitt Board's recommendation of the merger and the financial analyses performed by Citigroup in connection with its fairness opinion supporting the merger.  *See* Proxy Statement at 49-60 ("Background on the Merger"), 64-69 ("Recommendation of the Hewitt Board of Directors and Its Reasons for the Merger") & 76-88 ("Opinion of Hewitt's Financial Advisor").  Despite this robust disclosure, Plaintiff claims the Hewitt Defendants breached their fiduciary duty of candor under Delaware law by pointing to a laundry

list of additional information it would liked to have seen in the proxy statement.  Complaint ¶¶ 80-82.

Under Delaware law, "when a plaintiff is seeking expedited proceedings amidst allegations of disclosure violations, . . . . [w]hat must be resolved is whether there is a colorable claim that any of plaintiff's alleged disclosure violations are material."  *In re 3Com*, 2009 Del. Ch. LEXIS 215, at *3-4.  An omitted fact is not material "simply because [it] might be helpful"; rather the fact must be one that "a reasonable stockholder would consider . . . important in a decision pertaining to his or her stock."  *Id*. at *4 (internal citations omitted).  Plaintiff has set forth no allegations in its Complaint to demonstrate that the additional information it believes should have been included in the proxy statement is "material."  Delaware courts have repeatedly found that the very types of information Plaintiff claims are missing from the proxy statement are not "material" and need not be disclosed.

Many of the items on Plaintiff's laundry list seek details and content of specific discussions and deliberations of the Hewitt Board.  Complaint ¶ 82(a)-(i) & (y).  Under Delaware law, detailed disclosure of the specific discussions and deliberations of the board is not required. *See Globis Partners L.P. v. Plumtree Software, Inc*., No. 1577-VCP, 2007 Del. Ch. LEXIS 169, at *50 (Del. Ch. Nov. 30, 2007) (while the board must present a "full and fair characterization" of historical events, a "play-by-play description of merger negotiations" is not required (internal citation omitted)); *Newman v. Warren*, 684 A.2d 1239, 1246 (Del. Ch. 1996) (fairness does not require "the board to disclose the details of the various discussions and deliberation of the various board members").

Several of the other items on Plaintiff's list relate to the financial and business data Citigroup used or relied on in issuing its fairness opinion in connection with the Proposed

Transaction and the underlying analysis supporting Citigroup's fairness opinion.  Complaint ¶ 82(a), (j)-(x).  Once again, Delaware law does not require the disclosure of such information. *See Globis Partners*, 2007 Del. Ch. LEXIS 169, at *47 ("Delaware law does not require disclosure of all the data underlying a fairness opinion such that a shareholder can make an independent determination of value"); *Goodwin v. Live Entm't, Inc.*, 1999 Del. Ch. LEXIS 5, at *33 ("Disclosure of the underlying analysis supporting a fairness opinion '[is] not ordinarily required.'" (internal citation omitted)).

Plaintiff also alleges that the disclosure regarding Citigroup's past transactions with Hewitt and Aon in the fairness opinion should have included information regarding the exact compensation received by Citigroup for such services.  Complaint ¶ 82(z).  Delaware courts have found that disclosures such as that made by Citigroup are adequate and that the additional information sought by Plaintiff is not required.  *See* Proxy Statement at C-2, *see also Snyder v. Convergent, Inc*., No. 10236, 1988 Del. Ch. LEXIS 165, at *5-6 (Del. Ch. Dec. 21, 1988) (finding that language similar to that contained in the Citigroup fairness opinion appended to the proxy statement is adequate disclosure).

Because Plaintiff has not stated a colorable claim that the Hewitt Defendants breached their fiduciary duty to Hewitt shareholders, ordering expedited discovery based on such wholly unsubstantiated and legally insufficient allegations would not be justified.

## II.     Plaintiff Has Not Demonstrated That The Discovery It Seeks Is Necessary Or Reasonable.

Plaintiff has not demonstrated that the expedited discovery it seeks is necessary or reasonable in light of the circumstances.  *Merrill Lynch,* 194 F.R.D. at 623 (expedited discovery is "not the norm"; a plaintiff "must make some *prima facie* showing of the *need* for the expedited

discovery").  Plaintiff so far submitted no specific discovery requests to the Court for review in

connection with its motion.  Nor has Plaintiff provided information regarding the topics or areas

proposed to be the subject of its expedited discovery, much less explanation of why the

expedited discovery it seeks is necessary for purposes of a preliminary injunction motion.  *See*

*Merrill Lynch*, 194 F.R.D. at 621 (denying motion for expedited discovery where, in part, "[n]o

effort whatsoever [wa]s made to tailor the discovery sought . . . to the specific issues that will be

determined at the preliminary injunction hearing").  While Plaintiff states in conclusory terms

that it expects expedited discovery will be "focused" and "narrowly tailored," Motion at 15, it

has provided this Court with no evidence to suggest that will be the case.  *See Share Corp.*, 2010

U.S. Dist. LEXIS 24653, at *7 n.3 ("[M]otions for expedited discovery are typically denied

when the movant's discovery requests are overbroad." (internal citation omitted)).

## **CONCLUSION**

For the reasons stated, Plaintiff's Motion for Expedited Discovery should be DENIED.

Dated:  August 20, 2010

By:  /s/ Matt D. Basil

Craig C. Martin
Matt D. Basil
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350


John S. Kiernan (*pro hac vice admission pending*)
Maeve O'Connor (*pro hac vice admission pending*)
Lisa Howley (*pro hac vice admission pending*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000

*Attorneys for the Hewitt Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I, Matt Basil, an attorney, hereby certify that on August 20, 2010, I electronically filed the foregoing Hewitt Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Expedited Discovery with the Clerk of the Court, using the CM/ECF system, which sent electronic notification of such filings to the following:

Donald Lewis Sawyer
Steven A. Kanner
Michael Jerry Freed
Freed Kanner London & Millen LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2010.

<u>/s/ Matt D. Basil</u>

Matt D. Basil